UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| SCOTT L. McDANIEL, | : Case No. 3:16-cv-00231 |
| Plaintiff, | : District Judge Thomas M. Rose |
| | : Magistrate Judge Sharon L. Ovington |
| vs. | : |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : |
| Defendants. | : |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Scott L. McDaniel brings this case *pro se* challenging the Commissioner's final decision to deny his applications for Disability Insurance Benefits and Supplemental Security Income. The Commissioner denied Plaintiff's applications through a decision by Administrative Law Judge (ALJ) Lloyd E. Hubler, III who concluded that Plaintiff was not under a benefits-qualifying disability. This case is presently before the Court for review of ALJ Hubler's decision by way of Plaintiff's *pro se* Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), the administrative record (Doc. #6), and the record as a whole.

On June 13, 2013, the date Plaintiff's asserted disability begin, he was 43 years old. During elementary and high school, he was in special education classes. Over the

---
[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

years after graduating from high school, he worked as a truck driver and a tree-trimmer helper.

During his proceedings with Social Security Administration, he was represented by an attorney. His attorney argued, in part, that ALJ Hubler erred by not finding that Plaintiff has a severe mental-health impairment and by not appropriately addressing Plaintiff's chronic pain. (Doc. #6, pp. 334-37; *PageID* #s 386-89).

Before issuing his non-disability decision, ALJ Hubler held a hearing during which Plaintiff testified. He explained that he had been in excruciating back pain during the 2-year period before he stopped working. He fought the pain but eventually he could not walk. At the time of the ALJ's hearing (April 2015), Plaintiff was taking pain medications, muscle relaxers, and medication to help him sleep. His medications made him severely drowsy. *Id.* at p. 60; *PageID* #108. He had also been treated with epidural injections that gave him "a little bit of benefit." *Id*. at p. 56; *PageID* #104. He estimated his daily pain level at between a 4 and a 6, presumably on a 0-to-10 pain scale (0 equaling pain free; 10 equaling the worst pain). *Id.* At times, his pain level rises to and 8 or 9. *Id*. at p. 59; *PageID* #107. He wore a back brace at the time of the ALJ's hearing.

Plaintiff's pain was in the middle of his back on the right side. He also had shooting pain down his leg. He described it as constant stabbing, aching pain. *Id*. at p. 58; *PageID* #106. He experienced pain all day long. He had not undergone surgery to help relieve his pain but had gone to the emergency room for treatment and had been through physical therapy twice. Physical therapy did not help relieve his pain. He found aqua therapy helpful, but his pain restarted as soon as he got out of the pool. He used

crutches at times when his pain level gets very severe. He also tried to hold on to stuff, and took breaks, when he walks. He estimated that he can walk about 1 block. He can lift about 6 or 7 or 8 pounds. His ability to reach overhead is limited. His most comfortable position was bent over but his leg would get numb, requiring him to sit. *Id*. at pp. 66, 71; *PageID* #s 114, 119.

During the summer of 2014, Plaintiff was treated for several blood clots: 1 in his leg and 2 in his lungs. He explained that physicians were worried the blood clots might return in his right leg. He also had experienced kidney disease (nephrotic syndrome), which was in remission at the time of the ALJ's hearing. Plaintiff explained, "I spill protein into my urine, and I can swell, you know, that's probably going to be a life given thing for me to do that. I only have half of a kidney on my left side and no spleen. I'm highly susceptible to pneumonias and colds and such. I have cataract—steroid cataracts on my eyes that effect my vision. My right arm, I can't straighten it …." *Id*. at 65; *PageID* #113.

Plaintiff received treatment from a psychiatrist who prescribed Wellbutrin. He was also on Lexapro, prescribed by his family doctor. Plaintiff testified, "I cry. I'm upset. I have a lot of unself [sic]-confidence with everything that's going on with me. I've had this history since I was a small child, but I never seek treatment for it. You know, I cry daily and … things really got me upset…, I have thought about suicide …." *Id*. at 64; *PageID* #112. He further testified that had had always been depressed. He has difficulty concentrating, memory problems, and understanding instructions and new information due to his learning disability. *Id*. at 67; *PageID* #115. He also feels

3

worthless–like no one cares about him. He noted, "I'm at the wits end of my world, you know, where I don't know what to do any more." *Id.* at p.70; *PageID* #118.

During a normal day, he lies on his back watching television. He switches position, usually to laying on his left side and uses pillows between his legs to keep himself as comfortable as possible. He spends 3 quarters of his day lying down. *Id.* at 72; *PageID* #120. He will also alternate between sitting and standing, 15 minutes each. He does not drive because he takes Morphine. He sleeps 4 or 5 hours each night and naps on and off throughout the day. He is able to take a shower by holding on to something. He does not do household chores. He makes sandwiches for himself but then immediately returns to the couch. His daughter visits him and does the laundry and other household tasks for him. When he goes to the grocery store, he holds onto a cart and doesn't carry milk or soft drinks.

Turning to ALJ Hubler's decision, he found that Plaintiff was not under a disability by conducting the 5-step evaluation required by social security law. *See* 20 C.F.R. § 404.1520(a)(4).[2] His more significant findings began with his conclusion that Plaintiff had 2 severe impairments—"degenerative changes of lumbar spine; borderline intellectual functioning"—but the ALJ determined that Plaintiff's impairments did not automatically constitute a disability.

The ALJ next assessed Plaintiff's residual functional capacity or the most he could do despite his impairments. *See* 20 C.F.R. 404.1545(a); *see also Howard v. Comm'r of*

---

[2] The citations to the Regulations will identify Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplement Security Income Regulations.

4

*Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, the ALJ found that despite Plaintiff's impairments, he could still perform a limited range of sedentary work.[3] And, given that ability along with his education, work experience, and age, he could still perform a significant number of jobs available to him in the national economy, according to the ALJ. The availability of such jobs, namely "inspector," "sorter," and "bench assembler" meant that Plaintiff was not under a benefits-qualifying disability. (Doc. #6, pp. 16-29; *PageID* #s 64-77).

The present judicial review determines whether ALJ Hubler applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If ALJ Hubler failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of

---

[3] Under social security law, sedentary work involves the least strenuous work activities, such as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

5

evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff relies on, and has attached to his Statement of Errors, a Memorandum his former attorney submitted to the Social Security Administration's Appeals Council. His attorney contended in this Memorandum that ALJ Hubler (1) failed to give sufficient weight to Plaintiff's treating physician, (2) failed to appropriately evaluate Plaintiff's credibility, and (3) failed to appropriately evaluate the record in conjunction with the Social Security Administration's pain regulations. His counsel also presented the Appeals Council with additional evidence. The Appeals Council denied further review.

The ALJ placed great weight on the opinions of treating physicians Dr. Page, Dr. Ajlouini, and Dr. Mehta when finding that Plaintiff could perform a limited range of sedentary work. The ALJ reasoned that their treatment records support the conclusion that Plaintiff "experiences some physical limitations as a result of his impairment and symptoms." (Doc. #6, p. 25; *PageID* #73). No error occurred here because the ALJ credited these treating physicians' opinions with great weight, thus favoring Plaintiff, and because substantial evidence justified the ALJ in doing so. *See* Doc. #6, pp. 484-85, 644-707, 830-944; *PageID #s* 537-38, 698-761, 884-997.

Plaintiff's counsel argued in his Memorandum that the ALJ failed to mention or address Dr. Page's opinions, *id*. at pp. 484-85; *PageID* #s 537-38. (Doc. #8, *PageID* #1002). Although this could be error, *see Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009), the ALJ did not ignore Dr. Page's opinions. Instead, he placed great weight on them. Doing so, he accepted Dr. Page's opinion in his assessment of

Plaintiff's residual functional capacity and, more specifically, when finding Plaintiff limited to standing and walking for 2 hours, and needed to change position every 15 minutes. (Doc. #6, p. 23; *PageID* # 71). The ALJ therefore did not err as suggested by Plaintiff's former attorney.

Plaintiff (or his former attorney) does not challenge the ALJ's consideration of any other specific treating or non-treating medical source's opinion. As to state agency physicians, the ALJ properly placed some weight on the opinions of Drs. Bolz and Southerland. The ALJ accurately observed that Drs. Bolz and Southerland each believed that Plaintiff could perform a range of unskilled light work. The ALJ did not fully credit their opinions due to Plaintiff's testimony and medical evidence. This led the ALJ to find Plaintiff more limited than either Dr. Bolz or Dr. Southerland thought by concluding he was could perform a limited range of sedentary work (rather than more strenuous light work). The ALJ committed no error when he decided not to fully credit these physicians' opinions. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632-33 (6th Cir. 2016) (no error in evaluation of non-examiners' opinions); *see also McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 (July 2, 1996) (instructing ALJs on how to evaluate opinions from state agency medical sources).

Plaintiff's attorney next challenged the ALJ's evaluation of Plaintiff's credibility. The ALJ, according to Plaintiff's attorney, did little more than recite the applicable factors and his conclusion that Plaintiff was not fully credible, and omitted sufficiently specific reasons for discounting Plaintiff's testimony. These contentions lack merit.

The ALJ recognized that objective evidence showed only mild abnormalities. For example, the ALJ noted that while x-ray and MRIs revealed degenerative changes at multiple levels, there was no evidence of vertebral misalignment or definite evidence of central or exiting nerve root compromise. (Doc. #6, p. 18, *PageID* #66). Plaintiff's EMG testing was normal, and an MRI study in September 2014 showed no evidence of any changes or worsening of Plaintiff's degenerative disc disease. *Id*. The ALJ wrote that Plaintiff's "neurologic and sensory examinations have been normal (Ex 27F/13), and he has exhibited normal strength in his bilateral lower extremities (Ex 27F/58)." (Doc. #6, pp. 19, 842, 887; *PageID* #s 67, 896, 941). This constitutes substantial evidence supporting the ALJ's decision to discount Plaintiff's credibility. *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions."). The ALJ also accurately noted that "clinicians observed that [Plaintiff] exhibits 5/5 muscle strength in all four of his extremities, as well as normal range of motion in his lower extremities." (Doc. #6, pp. 24, 533, 611; *PageID* #s 72, 586, 664). This was a valid reason to discount Plaintiff's testimony about his levels of pain and resulting impairments. *See Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) ("the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion [that Plaintiff was not disabled]….").

ALJs, moreover, must look at both the objective medical evidence and other evidence to assess a claimant's allegations of pain and resulting limitations. *See* 20

C.F.R. § 404.1529(c). Consistent with the regulations, the ALJ discussed Plaintiff's testimony regarding the frequency and intensity of his symptoms, his medications and side effects, and his treatment history. (Doc. #6, pp. 18-27, *PageID* #s 66-75); *see* 20 C.F.R. §404.1529; *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186 (July 2, 1996); *Chapman v. Astrue*, No. 1:10-cv-155, 2011 WL 1897434 at *6 (S.D. Ohio Mar. 10, 2011) (Bowman, M.J.) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.") (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). The ALJ noted, for instance, that while Plaintiff "alleges he has trouble walking and spends most of his days lying down, he has characterized himself as being very active, including walking his dog three times per week." (Doc. #6, p. 24; *PageID* #72) (citations omitted). Substantial evidence supports this. *Id.* at 553, 768; *PageID* #s 606, 822. Substantial evidence also supports the ALJ's recognition that despite Plaintiff's references to his anxiety and depression, he exhibited appropriate mood and affect, and normal memory. *Id*. at pp. 24, 472; *PageID* #s 72, 525). The ALJ accurately noted that clinicians described Plaintiff's affect as normal, his judgment as normal and mood as normal. *Id.* at pp. 24-25, 605; *PageID*#s 72-73, 658. The ALJ reasonably observed, "[c]linicians have also reported that Plaintiff does not appear nervous or anxious, and that his behavior is normal." *Id*. at pp. 25, 422, 605, 742; *PageID*#s 73, 475, 658, 796. And, the ALJ accurately recognized that Plaintiff "generally denied symptoms of depression." *Id*. at pp. 20, 376-77, 379, 394, 425-26, 432, 436-37, 591; *PageID* #s 68, 429-30, 432, 447, 474, 475, 478-79, 485, 489-90, 644. The ALJ also documented the fact that the vast

majority of Plaintiff's clinical psychiatric evaluations have been normal and accurately cited supporting evidence. *Id*. at p. 20). The ALJ noted, and the evidence bears out, that Plaintiff started family counseling in October 2014, and by December 2014, his mental status examination was completely normal, with normal appearance, normal speech, euthymic mood, goal directed thoughts, no hallucinations or suicidal ideation, and no abnormal movements. *Id*. at pp. 20, 756; *PageID* #s 68, 810. Lastly, the ALJ properly considered Plaintiff's ability to engage in certain daily activities when crafting the RFC. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.");

Accordingly, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final decision concerning Plaintiff's July 17, 29013 applications for Disability Insurance Benefits and Supplemental Security Income be affirmed; and

2. The case be terminated on the docket of this Court.


May 19, 2017                               *s/Sharon L. Ovington*
                                           Sharon L. Ovington
                                           United States Magistrate Judge

10

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).